UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATURA HEARD and SONCEREAI GIBSON, | )<br>)<br>) |
| Plaintiffs, | ) No. 10 C 01050 |
| v. | )<br>)<br>) Judge Edmond E. Chang |
| CITY of CHICAGO, Chicago Police Officers MARK GUTKOWSKI and TIMOTHY BALASZ, | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Katura Heard and Soncereai Gibson sued Chicago Police Officers Mark Gutkowski and Timothy Balasz, as well as the City of Chicago, for violating their constitutional rights under 42 U.S.C. § 1983.[1] R. 140. Plaintiffs also allege that Defendants violated several Illinois state laws. *Id.* Defendants move for partial summary judgment on Heard's claims against Officer Gutkowski for false arrest, unreasonable search, and malicious prosecution, and on Heard's claims against Defendant Balasz for excessive force and battery. R. 118. Defendants also move for summary judgment on the associated indemnification claims against the City. *Id.* For reasons explained below, Defendants' motion is granted in part and denied in part.

---

[1]This Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331, and the state-law claims are covered by supplemental jurisdiction. Citation to the record is "R." followed by the entry number.

## I.

In deciding Defendants' motion for partial summary judgment, the Court views the evidence in the light most favorable to the non-moving party. Plaintiffs' claims arise out of their arrest on the South Side of Chicago in February 2009. R. 140, 2d Am. Compl. ¶ 1. Although the parties disagree on many of the specific details of the arrest and the events leading up it, the following facts are limited to those necessary to deciding this motion, and are not in dispute (except as specifically noted).

On February 17, 2009, Plaintiffs Katura Heard and Soncerai Gibson were arrested by Chicago police officers. R. 119, Defs.' Stmt. of Facts (DSOF) ¶ 1. Shortly before their arrest, Plaintiffs were in a car facing east on 100th Street (toward Michigan Avenue) talking to Dwayne Waterford about a possible job for Heard. *Id.* ¶¶ 11-12; R. 128, Pl.'s Stmt. Add'l Facts (PSAF) ¶ 1. Heard was in the driver's seat. DSOF ¶¶ 12-13. Waterford was standing beside Plaintiffs' car. PSAF ¶ 1. After the conversation, Plaintiffs drove east on 100th Street toward Michigan Avenue. DSOF ¶ 13. While driving that way, Gibson saw an unmarked police car with three occupants turn left off of Michigan Avenue and pass Plaintiffs as the police car headed westbound on 100th Street. *Id.* ¶ 14; PSAF ¶ 3. The occupants of the unmarked police car were Defendants Mark Gutkowski and Timothy Balasz, and a third Chicago Police officer, Kevin Connolly.[2] DSOF ¶ 53. Plaintiffs were then stopped by the unmarked police car,

---

[2]Plaintiffs eventually added Officer Connolly as an additional defendant in their Second Amended Complaint, R. 140, but he was dismissed in an earlier order because Plaintiffs' claims against him were barred by the statute of limitations.

which eventually had made a U-turn on 100th Street after initially passing Plaintiffs' car. *Id.* ¶¶ 15-16. At the time that Plaintiffs were pulled over, there were only two police officers in the car. *Id.* ¶¶ 17-18. The central issue of Defendants' motion is who were those two police officers?

After they were pulled over, Plaintiffs claim they were approached on either side of their car by the two officers, who had their guns drawn and pointed at Plaintiffs. DSOF ¶¶ 17, 22. Heard was handcuffed, searched, and ultimately arrested for manufacture and delivery of a controlled substance. *Id.* ¶¶ 23, 31. None of the officers at the scene of Plaintiffs' arrest found any drugs on Plaintiffs' persons, in their vehicle, or anywhere near the scene. PSAF ¶ 19. Heard also testified that when he was escorted to the lock-up back at the police station, the officer escorting him grabbed his chest and slammed Heard against a wall, causing him to hit his back and head. DSOF ¶ 36. There were no other officers present during this alleged incident of excessive force. *Id.* ¶ 37.

Whether Plaintiffs' initial detention, the search, and the arrest were legally justified is an issue that is vigorously disputed by the parties, but it is not an issue that is specifically argued in this motion (in other words, Defendants do not seek summary judgment on the grounds that the undisputed facts show that there was probable cause for Plaintiffs' detention, search, and arrest). It is worth noting that the officers admit that Plaintiffs were not breaking any traffic laws when they were pulled over. PSAF ¶ 6. Rather, Officers Gutkowski and Balasz claim that they witnessed Plaintiffs in a suspected drug deal with Waterford (the man who was standing beside Plaintiffs' car).

DSOF ¶¶ 53-54. Plaintiffs dispute this claim. R. 125, Pls.' Resp. to Defs.' Stmt. Facts (PSOF) ¶ 53.

Plaintiffs' Second Amended Complaint alleges a number of claims against Officers Gutkowski and Balasz and the City of Chicago. Pertinent to Defendants' motion, Heard brings claims against Officers Gutkowski and Balasz under 42 U.S.C. § 1983 for false arrest, excessive force, and unlawful search. 2d Am. Compl. (Counts 1-3). Heard also brings state-law claims against the officers for false imprisonment, malicious prosecution, and battery, *id.* (Counts 4-6), and a common law indemnification claim against the City of Chicago for the officers' alleged unlawful conduct. *Id.* (Count 7). Defendants move for summary judgment with respect to Heard's false arrest, unlawful search, and malicious prosecution claims against Officer Gutkowski, and with respect to Heard's excessive force and battery claims against Officer Balasz. R. 118, Defs.' Mot. Summ. J.[3]

---

[3]Defendants also move for summary judgment on Gibson's claim for the illegal search of her person by an unknown female officer at the police station following her arrest Defs.' Mot. Summ. J. at 3 (third request for relief). But Plaintiffs respond that such a claim is not alleged in their original or amended complaints, and that Gibson "has not advanced any claim against an unknown female police officer." R. 124, Pls.' Resp. at 11. Based on Plaintiffs' representation that they are not asserting such a claim, the Court denies as unnecessary Defendants' third request for relief. Therefore, this opinion solely addresses whether summary judgment in favor of Defendants is warranted on certain of Heard's claims. Gibson's claims, and the facts on which they are based, are not discussed except insofar as they are relevant to Heard's claims.

II.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent. Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008). The summary judgement rule requires the Court to view the facts in the light most favorable to the non-movants, whatever the source of the facts, including if the source is the *moving* party. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 762-63 (7th Cir. 2006). Therefore, the Court must accept the facts that favor the plaintiffs in this case (so long as a reasonable jury can find those facts as true), even if the facts are "pardoxically, those pronounced by . . . the defendants." *Id.* at 762.

III.

In moving for summary judgment on certain of Heard's claims, Defendants argue that Heard "cannot establish that Officer Gutkowski was responsible for the vehicle stop, detention, search of person, search of the vehicle, or arrest, or that Officer Balasz was responsible for the alleged excessive force and battery." R. 121, Defs.' Br. at 4. The thrust of Defendants' argument is that Heard and Gibson's testimony about the identity of the two officers who actually stopped, searched, and arrested them, as

5

well as of the officer who escorted Heard back to the lock-up, is so confused and conflicting that no reasonable jury could conclude that Officer Gutkowski was present at the scene of the car stop, or that Officer Balasz was the officer that allegedly used force against Heard back at the police station. After carefully reviewing the record on summary judgment, the Court finds that the Plaintiffs' testimony, when combined with the testimony of Officers Gutkowski, Balasz and Connolly, dooms Heard's claim against Officer Balasz for excessive force and battery, but leaves open the possible conclusion by a reasonable jury that Officer Gutkowski is liable for the officers' alleged unlawful conduct at the scene of Heard's arrest, either because Officer Gutkowski was present at the scene, or because he directed the stop and participated in the decision to arrest Heard.

Taking first the motion with respect to the claims against Officer Gutkowski, the parties agree that when Plaintiffs were initially stopped on February 17, 2009, there were only two officers in the unmarked police car. DSOF ¶¶ 17-18; PSOF ¶¶ 17-18. At his deposition, Heard could not identify any of the police officers by name. DSOF ¶ 21. However, he described the driver-officer as "short" and "chubby," and the passenger-officer as "taller" and "slim." R. 120-2, Defs.' Exh. B (Heard Dep.) 87:20-88:3, 90:8-18. Heard testified that the driver-officer handcuffed and searched him, and that the passenger-officer handcuffed and searched Gibson. *Id.* 101:2-103:2, 105:13-17, 109:15-17. Heard stated that he encountered the "short chubby" officer on two other occasions after February 17, 2009: (1) after Plaintiffs were acquitted of the charges, Heard and Gibson spoke with that same officer about getting money back that was confiscated

6

during the arrest, *id.* 94:6-24; and (2) the same officer arrested Heard in 2010 on unrelated charges. *Id.* 216:12-217:5, 253:21-254:8. Officer Connolly (remember, he is no longer a named defendant) testified, and neither Plaintiff disputes, that Connolly was the officer who spoke with Plaintiffs when they came to pick up their confiscated money, and was also the officer who arrested Heard in 2010. R. 120-5, Defs.' Exh. D (Connolly Dep.) 13:11-14:5, 18:20-22. Officer Connolly also admitted that he was one of the two officers who arrested Plaintiffs on February 17, 2009. *Id.* 60:10-12. Therefore, there is no genuine dispute of fact that Officer Connolly was one of the two officers who was initially present at the scene of Plaintiffs' search and arrest.

But who was the second officer? As explained above, Heard could not identify him by name but described him as a "taller slimmer" officer (as compared to Officer Connolly). Defendants argue that Heard cannot rely on the testimony of Gibson (who definitively identified Gutkowski as having been present at the scene of the arrest), because "her story is simply irreconcilable with his." Defs.' Br. at 6. Defendants' argument is based on their assertion that Gibson "claims to be certain that the two officers [on] the scene. . . . were Officers Gutkowski and Balasz," which would be inconsistent with Heard's testimony that Officer Connolly was one of the two officers. *Id.* Sure, Gibson testified that Officer Gutkowski was definitely one of the officers who directly participated in Plaintiffs' stop, search, and arrest—but Gibson could not identify the other officer. *See* R. 120-4, Defs.' Exh. C (Gibson Dep.) 15:15-16, 18:17-22. Thus, a reasonable jury could believe *parts* of both Heard's and Gibson's testimony and

7

find that the two officers were Officers Gutkowski and Connolly.[4] That being said, Plaintiffs admit, at least for purposes of summary judgment, that "[Officer] Gutkowski never *physically* searched Plaintiffs' vehicle . . . or . . . Plaintiffs' person." PSOF ¶ 56. But Plaintiffs maintain that Officer Gutkowski arrived at the scene sometime before Plaintiffs were arrested, and that there is sufficient evidence of his involvement in both initiating the stop and deciding to arrest Plaintiffs to prevent summary judgment on Heard's unlawful search, false arrest, and malicious prosecution claims against Officer Gutkowski. Pls.' Resp. at 9-10. The Court agrees.

As explained above, the basis for Heard's false arrest, unreasonable search, and malicious prosecution claims is that Defendants did not have probable cause to stop, search, and arrest plaintiffs. *See* 2d Am. Compl. ¶¶ 7, 9-13, 15. Defendants' asserted basis for the stop, search, and arrest is that both Officer Balasz *and* Officer Gutkowski witnessed Plaintiffs in a suspected drug deal with Waterford. DSOF ¶ 53.[5] Plaintiffs deny that allegation and assert that Waterford never reached his hand into Plaintiffs' car (as Defendants claim), and that the officers were too far away to see Plaintiffs' interaction with Waterford. PSOF ¶ 53; Pls.' Resp. at 1-2. Whether there was probable

---

[4] For the principle that a factfinder may believe parts of a witness's testimony, rather than credit it all or discredit it all, see *United States v. Edwards*, 581 F3d 604, 612 (7th Cir. 2009) (noting that "anyone who has ever tried a case or presided as a judge at a trial knows that witnesses are prone to fudge, to fumble, to misspeak, to misstate, to exaggerate," and commenting that "[i]f any such pratfall warranted disbelieving a witness's entire testimony, few trials would get all the way to judgment.") (quoting *Kadia v. Gonzales*, 501 F3d 817, 821 (7th Cir. 2007) and citing other cases).

[5] There is no allegation, for example, that Plaintiffs were breaking any traffic laws when they were pulled over. PSAF ¶ 6.

8

cause, or reasonable suspicion,[6] for the officers to stop, search, and arrest Heard (or Gibson) is not an issue the Court can decide on this motion, but what is important is that Officer Gutkowski admits that he was responsible for initiating the stop of Waterford and Plaintiffs. Specifically, Officer Gutkowski testified that as he was driving down 100th Street and saw Plaintiffs and Waterford in a suspected drug deal, he said to Officers Connolly and Balasz, "Let's stop these three people." Gutkowski Dep. 48:15-22, 52:9-16. Further, after Officer Gutkowski exited the car to chase Waterford, he "yelled back to Officer Balasz and Officer Connolly to go stop [Plaintiffs'] vehicle." *Id.* 55:19-24. Therefore, Officer Gutkowski not only initiated the stop, but specifically *instructed* Officers Connolly and Balasz to pursue Plaintiffs. If a jury finds that there was no probable cause (or reasonable suspicion) to stop and search Plaintiffs, a jury could also reasonably conclude that Officer Gutkowski is liable for the other officers' conduct with respect to Heard because it was, at least partly, his decision to initiate the stop and search. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 859 (7th Cir. 1999) (personal involvement established where accused officer "personally direct[ ] the search" (citation omitted)).

---

[6]There may be a distinction between Officer Gutkowski's liability for the decision to initially stop and detain Plaintiffs (which would require reasonable suspicion), versus the decision to search and arrest Plaintiffs (which would require probable cause), particularly if there were any intervening events between Plaintiffs' initial detention and the Officers' decision to search and arrest them. However, the parties did not flesh out this distinction in their briefs, focusing instead on the factual issue of when and where Officer Gutkowski was present. Therefore, as detailed in Part IX below, the Court will allow all of Heard's claims against Officer Gutkowski to proceed to trial, although Defendants will be free to make more nuanced arguments about Officer Gutkowski's liability based on the facts that come out at trial.

Similarly, a jury could find Officer Gutkowski liable for Heard's false arrest and malicious prosecution claims. Even though Officer Gutkowski denies going to the scene of Plaintiffs' arrest, Gutkowski Dep. 72:18-73:8, there is sufficient conflicting evidence from which a reasonable jury could find that Officer Gutkowski came to the scene after he apprehended Waterford. *See* Balasz Dep. 112:4-114:15 (testifying that Officer Gutkowski came to the scene to search the area for drugs and rode back to the station with Officers Connolly and Balasz); Connolly Dep. 73:7-19 (testifying that at some point *before* Plaintiffs were arrested either he or Officer Balasz spoke to Officer Gutkowski about the arrest of Waterford). Moreover, Defendants *admitted* in their response to Plaintiffs' 56.1 Statement of Additional Facts that Officer Gutkowski "went to the location where Plaintiffs' vehicle had been pulled over and was present on Michigan Avenue during the Plaintiffs' arrest." *See* R. 132, Defs.' Resp. to Pls.' Stmt. Add'l Facts (DSAF) ¶ 18. In addition, Officers Gutkowski and Balasz both admitted that they made a joint and collective decision to arrest Plaintiffs. Gutkowski Dep. 70:22-71:11; Balasz Dep. 120:3-8. And (on the malicious prosecution claim) Officer Gutkowski was the only officer who testified at Plaintiffs' preliminary hearing (where the charges were dismissed). Gutkowski Dep. 21:17-18, 22:9-11. Based on these facts, it is possible that a reasonable jury could find that Officer Gutkowski was directly involved and personally responsible for Heard's false arrest and malicious prosecution. *See Ryan*, 188 F.3d at 859; *Janusz v. City of Chicago*, 797 F. Supp.2d 884, 892-93 (N.D. Ill. 2011) (allowing claims against officer to proceed to trial where there was evidence

that the officer participated in the decision to arrest, even though he was not physically present for the arrest).

Turning to Heard's claims against Officer Balasz, Defendants argue that summary judgment must be granted in favor of Officer Balasz for Heard's excessive force and battery claims because "Officer Balasz was not present for any incident of excessive force or battery at the police station by Plaintiff Heard's own admission." Defs.' Br. at 9. This portion of Defendants' motion is granted. Heard testified that an officer used force against him at the police station as he was being taken to the lock-up area. Heard Dep. 201:16-202:22. Heard stated that there were no other officers present when the incident occurred. *Id.* 210:4-10. Heard identified the officer that slammed him against the wall as the same "shorter" driver-officer who searched him when Plaintiffs were first pulled over, and also the officer who arrested him in 2010. PSOF ¶ 36. As discussed above, undisputed circumstantial evidence establishes that Heard effectively identified that officer as Officer Connolly. It is also possible a reasonable jury could infer that Plaintiff was mistaken in his identification, and that it was Officer Gutkowski who used force against him at the police station, because Officer Gutkowski testified that he was the one to take Heard back to the lock-up area. DSOF ¶ 57. But there is *no* evidence that it was Officer Balasz who used force against Heard, and because by Heard's own admission there was no other officer present in the hallway at the time, there is no basis for an excessive-force claim against Officer Balasz based on either personal involvement or failure to intervene.

## IV.

For the reasons stated above, Defendants' motion for partial summary judgment [R. 118] is granted in part and denied in part. Defendants' motion for summary judgment on Heard's claims against Officer Balasz for excessive force and battery is granted. Plaintiffs' claims for indemnification against the City of Chicago are also dismissed to the extent they are based on Plaintiff Heard's claim against Officer Balasz for excessive force and battery. Defendants' motion for summary judgment on Heard's claims against Officer Gutkowski for false arrest, unlawful search, and malicious prosecution is denied.

The following claims, including the claims that were not at issue on Defendants' motion, remain for trial (numbered according to the Second Amended Complaint):

- Plaintiff Heard's claims against:
  ▸ Officer Gutkowski, Officer Balasz, and the City of Chicago for false arrest (Count 1), unlawful/unreasonable search (Count 3), false arrest/imprisonment (state law) (Count 4), and malicious prosecution (Count 5).
  ▸ Officer Gutkowski and the City of Chicago for excessive force (Count 2) and battery (Count 6).
- Plaintiff Gibson's claims against Officer Gutkowski, Officer Balasz and the City of Chicago for false arrest (Count 8), unlawful/unreasonable search (Count 9), false arrest/imprisonment (state law) (Count 10), malicious prosecution (Count 11), battery (Count 12), intentional infliction of emotional distress (Count 13), and conversion (Count 14).

Plaintiffs' indemnification claims against the City (Counts 7 and 15) for any conduct for which the officer are found liable will also proceed to trial. At the upcoming status

hearing, the parties should be prepared to address the case schedule moving forward, including whether a settlement conference is sensible.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang

DATE: March 29, 2013